IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| James L. Burk, | : | |
| | : | Case No. 1:14-cv-835 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Granting Motion to Dismiss and |
| Danny R. Bubp, *et al.*, | : | Motion for Judgment on the Pleadings |
| | : | |
| Defendants. | : | |

This matter is before the Court on Defendant Danny R. Bubp's Rule 12(b)(6) Motion to
Dismiss Plaintiff's Amended Complaint (Doc. 24) and Defendants William C. Foster's, Jayme
Eldridge's, Greg Caudill's, David Benjamin's, and the Village of Winchester, Ohio's Motion for
Judgment on the Pleadings (Doc. 25).  For the reasons that follow, the Court will **GRANT** the
Motion to Dismiss and Motion for Judgment on the Pleadings.

I.      **BACKGROUND**

The well-pleaded allegations of the Amended Complaint are taken as true for purposes of
the pending motions.  Plaintiff James L. Burk is a resident of Clermont County, Ohio.  (Doc. 22
at PageID 166.)  Defendant Village of Winchester is a municipal corporation located in Adams
County, Ohio.  (*Id.* at PageID 167.)  At all times relevant hereto, Defendant Danny R. Bubp
served as the magistrate in the Winchester Mayor's Court, Defendant William C. Foster served
as the mayor of the Village, Jayme Eldridge served as a clerk for the Village, Defendant Greg
Caudill served as the police chief for the Village, and Defendant David Benjamin served as a
police officer for the Village.[1]  (*Id.* at PageID 166–67.)

---

[1]  For ease of identification, the Court will refer to Defendants using the job titles they held at the time of the
relevant events.

The Winchester Mayor's Court has jurisdiction over cases involving violations of local ordinances and state traffic laws.  (*Id.* at PageID 168; Ohio Rev. Code § 1905.01.)  Persons convicted in the Mayor's Court may appeal the conviction to a municipal court or county court having jurisdiction within the municipal corporation.  (*Id.* at PageID 168; Ohio Rev. Code § 1905.22.)

**A.      Allegations Specific to Burk**

On May 8, 2009, Officer Benjamin pulled over Plaintiff Burk while he was driving and issued him a citation for speeding and operating a motor vehicle under the influence of alcohol ("OMVI").  (Doc. 22 at PageID 169; Doc. 22-1 at PageID 205.)  Officer Benjamin arrested Burk and impounded his vehicle, a 1991 Honda sedan.  (Doc. 22 at PageID 169; Doc. 22-1 at PageID 205.)  Officer Benjamin administered a breathalyzer examination to Burk, the result of which indicated that Burk was not legally intoxicated.  (*Id.*)  Burk refused to consent to testing of his urine sample.  (*Id.* at PageID 169–70.)  Officer Benjamin then completed and signed an Ohio BMV Form 2255 which stated in relevant part:

> I certify I arrested the person, having had reasonable grounds to believe the person was operating a vehicle upon a highway, or upon public or private property used by the public for vehicular travel or parking in the State of Ohio, under the influence of alcohol and/or drugs of abuse, in physical control of a vehicle while under the influence of alcohol and/or drugs of abuse, or with a prohibited concentration of alcohol in the whole blood, blood serum, blood plasma, breath, or urine.  I advised the person in the prescribed manner of the consequences of a refusal or a test.  The person either refused the test, or was under arrest for OVI and took the test and had a prohibited concentration of alcohol in the whole blood, blood serum, blood plasma, breath, or urine (all as described above). . . .  The information contained on this form is true to the best of my knowledge and belief.

(Doc. 22-2 at PageID 206.)  The Form 2255 listed potential vehicle sanctions, including seizure of the vehicle or license plate and forfeiture of the vehicle, but Officer Benjamin did not indicate that any of the vehicle sanctions were applicable.  (*Id.*)

Burk appeared before the Winchester Mayor's Court on May 21, 2009 on the speeding and OMVI charges.  (Doc. 22 at PageID 171.)  Burk alleges upon information and belief that Magistrate Bubp, Mayor Foster, Clerk Eldridge, Chief Caudill, and Officer Benjamin were present at the Mayor's Court when his case was called and considered.  (*Id.* at 171–74.) Magistrate Bubp directed police officers to discuss Burk's options with him outside of the courtroom after Burk's case was called and discussed.  Officer Benjamin and an officer believed to be Chief Caudill "proceeded to threaten and intimidate [Burk] that if he did not sign the title and motor vehicle over to [the Village], then he would be taken to jail, but that if he did agree to sign title over to [the Village], then the whole matter would be resolved."  (*Id.* at PageID 172– 73.)  Burk agreed to sign over vehicle title.  (*Id.* at PageID 173.)  Burk returned to the courtroom where Magistrate Bubp directed him to bring his certificate of title to the Mayor's Court the next day.  (*Id.*)  The judgment entry signed by Magistrate Bubp states that Burk was found guilty of "DUI" and sanctioned a $1000 fine plus $80 costs to be paid by "Defendant to transfer title of 1991 Honda Accord as if and for payment of fine."  (Doc. 22-3 at PageID 207.)  The judgment entry further imposed a 90 days period of incarceration in the Adams County Jail with "credit for time served, one day, all jail time suspended if Defendant transfer [*sic*] title to 1991 Honda Accord on 5/22/09."  (*Id.*)

Burk brought his vehicle certificate of title to the Mayor's Court on May 22, 2009.  (Doc. 22 at PageID 175.)  Burk assigned the certificate of title to the Village of Winchester.  (Doc. 22- 4 at PageID 209.)  Chief Caudill and Burk then proceeded to a local bank to have the assignment of the certificate of title notarized.  (Doc. 22 at PageID 175; Doc. 22-4 at PageID 208–09.) Mayor Foster signed the acknowledgment of the odometer reading on the back of the certificate of title.  (*Id.*)

More than three years later, on November 4, 2012, Mayor Foster applied for a new certificate of title in the name of the Village for the vehicle previously owned by Burk. (Doc. 22 at PageID 189; Doc. 22-15 at PageID 232.) The new certificate of title was issued in the name of the Village on November 15, 2012. (Doc. 22-15 at PageID 233.) The Village then transferred title on the vehicle to a third party for the sum of $450 on February 14, 2013. (*Id.* at 233–34.)

**B.    Allegations Regarding Similar Instances of Misconduct**

Burk alleges that Mark Kiser was similarly threatened or intimidated into transferring his motor vehicle title to the Village during or ancillary to proceedings at the Mayor's Court. (Doc. 22 at PageID 176–85.) Kiser initially protested that he did not want to turn over his vehicle to the Village, but he ultimately agreed to do so after a police officer threatened to increase the charges against him to felonies and take him to jail. (*Id.* at PageID 178–81.) Similarly, Burk alleges upon information and belief that Candi Gilbert turned over her vehicle to the Village because she was threatened or coerced. (*Id.* at PageID 184–85.) The Kiser proceedings occurred in or around April 2009, while the Gilbert proceedings occurred in or around July 2009. (*Id.*; Doc. 22-7 at PageID 213; Doc. 22-16 at PageID 235–36.) Burk alleges that discovery would establish that other individuals also transferred their motor vehicles to the Village following intimidation or threats. (Doc. 22 at PageID 185.)

In a letter dated August 13, 2009, the Village solicitor, Dana Whalen, informed Mayor Foster that the Mayor's Court did not have legal authority under Ohio law to take the title of seized vehicles in lieu of payment or reduction in fines. (Doc. 22 at PageID 187–88; Doc. 22-13 at PageID 229–30.) She stated that the forfeiture of vehicles or contraband could only be conducted in common pleas court proceedings following strict procedures. (*Id.*) She made the following recommendation to Mayor Foster:

4

It is therefore my recommendation that you advise the Magistrate and your police
officers to cease acceptance of vehicles in lieu of payment of fines.  Additionally,
I recommend that you reconcile where this has occurred and return the vehicles to
their owners.  I believe the village and the Magistrate does [*sic*] not have
governmental or judicial immunity in the event a §1983 federal action is brought
for seizure of vehicles in lieu of a fine.  I have federal case law that clearly
indicates that a Magistrate does not have judicial immunity where he exceeds that
which is permitted by him under the law.

(Doc. 22-13 at PageID 230.)

The Village did not return the surrendered vehicles to their previous owners.  (Doc. 22 at
PageID 188.)  The Village still retains possession of and title to the vehicle previously owned by
Mark Kiser.  (Doc. 22 at PageID 190–91.)  Mayor Foster sought issuance of a certificate of title
in the name of the Village as to the vehicle previously owned by Candi Gilbert on November 14,
2012.  (Doc. 22 at PageID 191; Doc. 22-16 at PageID 235–37.)  A new certificate of title was
issued in the name of the Village on November 15, 2012.  (Doc. 22-17 at PageID 237.)  The
Village then transferred title to the vehicle to a third party for the sum of $280 on February 27,
2013.  (*Id.* at 237–38.)

The Ohio Bureau of Criminal Identification and Investigation ("BCI") conducted an
investigation of the Winchester Police Department and the Winchester Mayor's Court from 2010
to 2013.  (Doc. 22 at PageID 185.)  Burk alleges that the BCI determined that Defendants
operated an enterprise in which individuals cited by the Police Department and/or brought before
the Mayor's Court were threatened or intimidated into transferring title of their motor vehicles to
the Village.  (*Id.* at PageID 186–87.)

## C.    Procedural Posture

Burk initiated this suit against Magistrate Bubp, Mayor Foster, Clerk Eldridge, Chief
Caudill, Officer Benjamin, and the Village on October 27, 2014.  (Doc. 1.)  He filed an Amended
Complaint (Doc. 22) on February 27, 2015.  Burk asserts a claim for a violation of his right to

due process pursuant to 42 U.S.C. § 1983 and a claim for "civil RICO" pursuant to Ohio Revised Code § 2923.34. (*Id.* at PageID 192–203.) Defendants now move to dismiss both claims on the basis of the statute of limitations, absolute or qualified immunity, and failure to state a claim upon which relief can be granted.

## II.     STANDARDS GOVERNING RULE 12 MOTIONS

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Rule 12(c) permits a party to move for judgment on the pleadings. The legal standard for adjudicating a Rule 12(c) motion is the same as that for adjudicating a Rule 12(b)(6) motion. *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A district court "must read all well-pleaded allegations of the complaint as true" on a Rule 12(b)(6) or Rule 12(c) motion. *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). However, this tenet is inapplicable to legal conclusions, or legal conclusions couched as factual allegations, which are not entitled to an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To withstand a dismissal motion, a complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]he complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Harvard v. Wayne Cty.*, 436 F. App'x 451, 457 (6th Cir. 2011) (internal quotation and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court does not require "heightened fact pleading of specifics, but only enough facts to state

a claim for relief that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III.  ANALYSIS

### A.  Claim for Federal Civil Rights Violation Pursuant to 42 U.S.C. § 1983

Burk alleges in his first cause of action that Defendants deprived him of his motor vehicle without due process.  Section 1983 creates a cause of action to remedy constitutional violations as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 actions arising in Ohio are governed by the two-year statute of limitations set forth in Ohio Revised Code § 2305.10.  *See Hunt v. City of Cleveland*, 563 F. App'x 404, 407 (6th Cir. 2014); *Browning v. Pendleton,* 869 F.2d 989, 990 (6th Cir. 1989) (en banc).  The statute of limitations runs from the date that the plaintiff knew or should have known about his injury. *Hunt*, 563 Fed. App'x at 407.  A complaint is subject to dismissal pursuant to Rule 12, despite the fact that the statute of limitations is an affirmative defense, if the allegations "show that relief is barred by the applicable statute of limitations."  *Jones v. Bock*, 549 U.S. 199, 215 (2007); *see also Perdue v. Ohio State Highway Patrol*, No. 1:14-cv-967, 2015 WL 457789, at *4 (S.D. Ohio Feb. 3, 2015) (citing *Jones* for the same principle).

Plaintiff Burk filed the Complaint in this action on October 27, 2014.  Defendants argue that the § 1983 claim is untimely because Burk's alleged injury occurred in May 2009 when he transferred title to his vehicle to the Village.  Burk responds that the statute of limitations did not begin to run until November 14, 2012, when the Village applied for a certificate of title in its own name for the vehicle, or on February 14, 2013, when the Village transferred title on the vehicle to a third party.

The Court must first decide what law is relevant to determine when Burk suffered an injury regarding the loss of his vehicle.  Burk contends that he was not fully divested of his legal right, title, and interest in the vehicle until the Village received a certificate of title in its name in November 2012.  He cites the Ohio Certificate of Title Act for the proposition that "[n]o person acquiring a motor vehicle from its owner . . . shall acquire any right, title, claim, or interest in or to the motor vehicle until there is issued to the person a certificate of title to the motor vehicle." Ohio Rev. Code Ann. § 4505.04(A).  Defendants respond that Burk is misconstruing the Certificate of Title Act, but also that the Act is not controlling in any event.

The Certificate of Title Act was enacted to create an instrument proving title to protect innocent purchasers of motor vehicles.  *Saturn of Kings Auotmall, Inc. v. Mike Albert Leasing, Inc.*, 92 Ohio St. 3d 513, 516, 751 N.E.2d 1019 (2001).  The Ohio Supreme Court explained in *Kings of Saturn Automall* that § 4505.04(A) controls to resolve competing claims of ownership by rival claimants to title to a motor vehicle.  *Id.* at 519.  Here, however, Burk is not bringing this action as a claimant to rightful ownership of the vehicle.  Rather, he asserts a claim for the alleged denial of due process when the Village threatened and intimidated him into surrendering possession of and the certificate of title to his vehicle.  Burk is suing to recover damages for the violation of his rights, not to regain possession of his vehicle.

8

The Ohio Supreme Court stated in an earlier case that § 4505.04 is "irrelevant to all issues of ownership except those regarding the importation of vehicles, rights as between lienholders, rights of bona-fide purchasers, and instruments evidencing title and ownership." *Smith v. Nationwide Mut. Ins. Co.*, 37 Ohio St. 3d 150, 153, 24 N.E.2d 507 (1988).  The Ohio Supreme Court in *Smith* applied the Ohio codification of the Uniform Commercial Code ("UCC"), Ohio Revised Code § 1302.42(B), to identify ownership of a vehicle for purposes of determining insurance coverage in the case of an accident.  *Id.*  The Ohio codification of the UCC provides in relevant part that "title passes to the buyer at the time and place at which the seller completes performance with reference to the physical delivery of the goods" unless otherwise explicitly agreed.  Ohio Rev. Code. § 1302.42(B).  The UCC, and not the Certificate of Title Act, should apply in this case because Burk is seeking damages for a due process violation arising from his loss of ownership of the motor vehicle, not seeking to prove a superior claim to ownership of the vehicle.  Therefore, Burk was divested of his ownership rights, and suffered his constitutional injury, if any, in May 2009 when he surrendered his vehicle and assigned the certificate of title to the Village.

This holding is consistent with Ohio forfeiture law.  Ohio recognizes "an equitable interest in vehicles apart from that of the certificate of title."  *United States v. Davis*, No. 13-1-DLB-CJS, 2014 WL 7236997, at *6 n. 6 (E.D. Ky. Dec. 17, 2014) (interpreting Ohio law).  The equitable ownership interest in a vehicle can be subject to forfeiture even if the equitable owner is not the title owner.  *Ohio v. Wegmiller*, 88 Ohio App. 3d 68, 72, 623 N.E.2d 131 (1993).  Courts have found that claims for wrongful forfeiture accrue at the time of the forfeiture proceedings.  *See Kripp v. Luton*, 466 F.3d 1171, 1177 (10th Cir. 2006) ("[A] claim challenging a forfeiture proceeding accrues only at the time of that proceeding."); *Blakely v. U.S.*, 276 F.3d

853, 856 (6th Cir. 2002) ("Plaintiffs['] claim accrued when they discovered or had reason to discover that their property allegedly had been fraudulently forfeited."); *Polanco v. U.S. DEA*, 158 F.3d 647, 654 (2d Cir. 1998) (stating that a cause of action for wrongful forfeiture accrues at the close of the forfeiture proceedings). The forfeiture-type proceedings here occurred in May 2009 in the Mayor's Court.

Finally, even if the Certificate of Title Act was controlling, the Court would still find that the statute of limitations began to run in May 2009. The Ohio Supreme Court in *Saturn of Kings Automall* interpreted § 4505.04(A) to mean that "title to and, thus, ownership of a motor vehicle in this context does not pass without *issuance or delivery* of the certificate of title." 92 Ohio St. 3d at 520 (emphasis added). The choice of words "issuance or delivery" is significant because the Ohio Supreme Court did not state the Certificate of Title Act required the recipient to obtain a new certificate of title issued in its name. This interpretation of the Certificate of Title Act is consistent with an earlier Ohio Supreme Court holding that a vehicle title passed to the transferee upon receipt of endorsement and delivery of the certificate of title to the transferee. *See Garlick v. McFarland*, 159 Ohio St. 539, 549, 113 N.E.2d 92 (1953) ("The cases establish the rule in Ohio that where the endorsement and delivery of a certificate of title for an automobile is made, title passes even if there is a failure on the part of the recipient to secure the issuance of a new certificate in his name.");[2] *In re Roberto*, No. 96-60616, 1996 WL 374114, at *2 (N.D. Ohio May 29, 1996) ("[T]here is authority for the proposition that when endorsement and delivery of a

---

[2] *Garlick* appeared to be implicitly contradicted by *Brewer v. DeCant*, 167 Ohio St. 411, 149 N.W.2d 166 (1958), wherein the Ohio Supreme Court stated that "a change in ownership of an automobile is not consummated until a certificate of title is issued in the name of the purchaser." *Brewer*, 167 Ohio St. at 411. However, the Ohio Supreme Court again approved the *Garlick* approach with its holding in *Saturn of Kings Automall*. The Sixth Circuit referred to the *Garlick* and *Brewer* decisions as "alternative rule[s]" in dicta in *McCaughey v. Garlyn Shelton, Inc.*, 208 F. App'x 427, 434 (6th Cir. 2006). Some courts have concluded that *Brewer* applies if the seller is an auto dealer, but *Garlick* applies if the seller is an individual. *See Burns v. Star Bank N.A. (Dayton)*, No. 12677, 1992 WL 15210, at *2–3 (Ohio App. Jan. 31, 1992); *Lavinder v. Motorists Mut. Ins. Co.*, No. L-86-075, 1986 WL 14371, at *3–4 (Ohio App. Dec. 12, 1986).

certificate of title are made, title passes even though there is a failure on the part of the recipient to secure the issuance of a new certificate of title in his name.").  Conversely, transfer of possession of a vehicle without the assignment and delivery of the certificate of title is not sufficient to vest legal title in the transferee.  *See First Merit Bank v. Angelini*, 159 Ohio App. 3d 179, 186, 823 N.E.2d 485 (2004); *Morris v. Erieway, Inc.*, 93 Ohio App. 3d 239, 245, 638 N.E.2d 142 (1994).  In the instant case, Burk agreed on May 21, 2009 to transfer title of his seized vehicle to the Village to pay his fine.  Then on May 22, 2009 he assigned and gave physical possession of the certificate of title to his vehicle to the Village.  These acts were sufficient to transfer title to the Village under the Certificate of Title Act as interpreted by the Ohio Supreme Court.

In conclusion, Burk's § 1983 claim for denial of due process is untimely and must be dismissed.

## B. Claim for Violation of Ohio Revised Code § 2923.34

Plaintiff Burk has also asserted a claim for violation of the Ohio Corrupt Activities Act ("OCAA"), Ohio Revised Code § 2923.34, against Defendants.  Burk brought the OCAA claim in this Court under the doctrine of supplemental jurisdiction.  28 U.S.C. § 1367(a).  However, the Court declines to exercise supplemental jurisdiction over this OCAA claim because the Court has dismissed the only claim upon which it has had original jurisdiction.  28 U.S.C. § 1367(c)(3).

## IV. CONCLUSION

For the foregoing reasons, Defendant Danny R. Bubp's Rule 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint (Doc. 24) and Defendants William C. Foster's, Jayme Eldridge's, Greg Caudill's, David Benjamin's, and the Village of Winchester, Ohio's Motion for Judgment on the Pleadings (Doc. 25) are **GRANTED**.  The Court dismisses with prejudice the

due proces claim asserted pursuant to 42 U.S.C. § 1983.  The Court declines jurisdiction over and dismisses without prejudice the OCAA claim.

IT IS SO ORDERED.

S/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court